IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

BENJAMIN FULLER
and
DAVID KRIVONAK,
       Plaintiffs,

v.                                                CIVIL ACTION NO. 4:13cv56

HUNTER ALIFF,
KENNETH LAMBERTI,
WAYNE MILLER,
MICHAEL SCOTT WINGFIELD,
MICHAEL CALEB INGROFF,
JOHN DOES 1 & 2,
and
JANE DOES 1 & 2,

       Defendants.

*MEMORANDUM OPINION AND ORDER*

Before the Court are three Motions to Dismiss pursuant to Rule 12(b)(6) of Federal Rules of Civil Procedure filed by defendants Kenneth Lamberti, Michael Caleb Ingroff, and Wayne Miller. The motions have been fully briefed and are ripe for judicial determination. For the reasons stated herein, Defendant Lamberti's Motion to Dismiss is **DENIED**, and Defendants Ingroff and Miller's Motions to Dismiss are **GRANTED IN PART AND DENIED IN PART**.

I. FACTUAL BACKGROUND

On April 30, 2013, Plaintiffs Benjamin Fuller and David Krivonak filed a Complaint against Defendants Hunter Aliff, Kenneth Lamberti, Wayne Miller, Michael Scott Wingfield, Michael Caleb Ingroff, John Does 1 & 2, and Jane Does 1 & 2. Plaintiffs asserted federal

1

jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332, and raised four counts against all defendants under Virginia common law: 1) Battery, 2) Assault, 3) Intentional Infliction of Emotional Distress, and 4) Conspiracy.

The following facts are alleged in Plaintiffs' Complaint. In May 2011, they were vacationing with friends at a private home on Gwynn's Island in Mathews County, Virginia. Compl. ¶ 17. During the evening of May 7, 2011, Plaintiffs were socializing around a bonfire on the beach behind the house where they were staying. Compl. ¶ 18. During the late evening of May 7, 2011, or the early morning of May 8, 2011, Aliff, Lamberti, and Miller came over from a nearby house and joined Plaintiffs around the bonfire. Compl. ¶ 19. At some point, Aliff, Lamberti, and Miller told Plaintiffs that they "seemed queer," and asked Plaintiffs whether they were gay. Compl. ¶ 20. Plaintiff Fuller responded that he was. Compl. ¶ 21. Aliff, Lamberti, and Miller then started to harass Plaintiffs with hostile, taunting, and vulgar comments and questions, such as asking whether they "like to suck dick" and refusing to drink from the same bottle as Plaintiffs because they knew where Plaintiffs' "mouths have been." Compl. ¶ 22.

Plaintiffs observed Aliff, Lamberti, and Miller using their cellphones to send what appeared to be text messages. Compl. ¶ 23. Plaintiffs assert that on information and belief, Aliff, Lamberti, and Miller used their cellphones to inform the other Defendants that Plaintiffs were gay and to encourage the remaining Defendants to join them at the beach for the purpose of further harassing Plaintiffs. Compl. ¶ 24. Shortly thereafter, the remaining Defendants came to the beach from a nearby house. Compl. ¶ 25. Although they had never met Plaintiffs before, they arrived at the beach making comments such as "Are these the faggots you were talking about?" and "I've never seen a real faggot before." *Id.* Minutes later, Aliff, Lamberti, Ingroff, Wingfield, and John Does 1 & 2, acting together, physically attacked Plaintiffs by punching,

2

kicking, and pushing them, pinning them to the ground, striking Fuller with a stone or other hard object and holding his head under water, and choking Krivonak. Compl. ¶ 26. During the attack, Jane Does 1 & 2 laughed, shouted, and verbally encouraged and incited Defendants to continue to attack the "faggots." Compl. ¶ 27.

After the attack, Plaintiffs told Defendants that they intended to report them to the police. Compl. ¶ 29. Defendants jeered at and taunted Plaintiffs, saying "Go ahead, see what the cops down here do with a couple of faggots like you." *Id.* Within minutes of the attack, Plaintiffs reported Defendants' conduct to the local police. Compl. ¶ 30. Deputies from the Mathews County Sheriff's Department arrived in the early morning of May 8, 2011, and asked Defendants about the attack. *Id.* Plaintiffs assert that on information and belief, later that same morning, in retaliation for Plaintiffs' call to the police, and in order to further intimidate and terrorize Plaintiffs, Defendants set fire to and thereby destroyed a kayak located on the lawn behind the house where Plaintiffs were staying. Compl. ¶ 31.

Plaintiffs allege that Defendants, individually and collectively, acted with actual malice toward Plaintiffs because they believed that Plaintiffs were gay. Compl. ¶ 32. As a result of Defendants' actions, Plaintiffs suffered physical injuries, including bruises, cuts, bleeding, physical pain and suffering, severe headaches, recurrent sleeplessness, difficulty concentrating, and in Krivonak's case, a broken nose and concussion which required medical treatment. Compl. ¶ 34. Plaintiffs also allege that they suffered pecuniary injuries including medical expenses and lost wages, and emotional and dignitary injuries including "severe emotional distress, pain, suffering, terror, humiliation, shame, and embarrassment." Compl. ¶¶ 36, 37.

On May 22, 2013, Lamberti filed an Answer denying Plaintiffs' allegations of assault, battery, intentional infliction of emotional distress, and conspiracy. On that same day, he filed a

Motion to Dismiss for failure to state a claim as to the conspiracy count (Count 4), and a Memorandum in support of his motion. The next day, Ingroff filed an Answer generally denying Plaintiffs' allegations. On that same day, Ingroff also filed a Motion to Dismiss for failure to state a claim as to Plaintiffs' claim of intentional infliction of emotional distress (Count 3) and conspiracy (Count 4), and a Memorandum in support of his motion. On June 6, 2013, Plaintiffs filed a Consolidated Opposition to Lamberti and Ingroff's Motions to Dismiss. On June 12, 2013, Ingroff filed a Reply to Plaintiff's Opposition. On September 17, 2013, Miller filed an Answer and a Motion to Dismiss for failure to state a claim as to Counts 3 and 4. Platiniffs filed their Memorandum in Opposition on September 30, 2013, reiterating the arguments they made in their response to Lamberti and Ingroff's motions.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of a complaint. *Francis v. Giacomello*, 588 F.3d 186, 192 (4th Cir. 2009). Courts will favorably construe the allegations of the complaint and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A Rule 12(b)(6) motion to dismiss should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires a plaintiff to demonstrate more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

4

(2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* As multiple district courts in this circuit have noted, these federal pleading standards are "procedural," not "substantive," rules, and therefore govern state law claims raised in a diversity case. *E.g., McFadyen v. Duke University*, 786 F. Supp. 2d 887, 920 (M.D.N.C. 2011), *aff'd in part, rev'd in part, Evans v. Chalmers*, 703 F.3d 636 (4th Cir. 2012). *See also Hatfill v. New York Times Co.*, 416 F.3d 320, 337 (4th Cir. 2005).

## III. DISCUSSION

Plaintiffs' Complaint pleads four causes of action: (1) battery, (2) assault, (3) intentional infliction of emotional distress ("IIED"), and (4) conspiracy to commit assault and battery. Only Defendants Ingroff and Miller move to dismiss Count 3, arguing that Plaintiffs have failed to sufficiently plead the required elements of outrageous conduct and severe distress. All three defendants move to dismiss Count 4. Defendant Lamberti asserts that Plaintiffs' conspiracy claim should be dismissed because Virginia does not recognize a cause of action for conspiracy to commit assault or battery. Defendants Ingroff and Miller move to dismiss on the grounds that Plaintiffs failed to plead sufficient facts to support a conspiracy claim.

### A. Count 3: Intentional Infliction of Emotional Distress (IIED)

To succeed on an IIED claim in Virginia, a plaintiff must allege that: (1) "the wrongdoer's conduct is intentional or reckless," (2) "the conduct is outrageous and intolerable," (3) "the alleged wrongful conduct and emotional distress are causally connected," and (4) "the distress is severe." *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991). *See also Almy v. Grisham*, 639 S.E.2d 182, 186 (Va. 2007). The tort "is not favored in the law." *Supervalu, Inc. v. Johnson*, 666 S.E. 2d 335, 370 (Va. 2008) ("[T]here are inherent problems in proving a claim

5

alleging injury to the mind or emotions in the absence of accompanying physical injury."). Neither Ingroff nor Miller dispute whether the Complaint has adequately pled the first and third prongs of an IIED claim, but Ingroff does challenge the sufficiency of the Complaint as to whether "the conduct is outrageous and intolerable," and both Defendants dispute whether Plaintiffs have adequately pled that "the[ir] distress is severe."

As to the second element of an IIED claim, "[l]iability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Gaiters v. Lynn*, 831 F.2d 51, 53 (4th Cir.1987). "[L]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991). The facts plead in the Complaint satisfy this standard. An example of outrageous conduct is illustrated in *Harrison v. Prince William County Police Dep't*, 640 F. Supp. 2d 688, 709-10 (E.D. Va. 2009). In *Harrison*, the court found outrageous conduct where one of the defendant police officers searched and seized the plaintiffs without cause, directed racial slurs at them, put one of the plaintiffs into a headlock, caused him to hit his head on the pavement, and ground his head into the pavement. The present facts are similar to *Harrison*. Ingroff and the remaining Defendants allegedly physically abused Plaintiffs by punching, kicking, and pushing Plaintiffs, pinning them to the ground, striking Fuller with a stone or other hard object and holding Plaintiff Fuller's head under water, and choking Plaintiff Krivonak. They also repeatedly directed derogatory comments and slurs at Plaintiffs. As pled, these facts go beyond merely "[i]nsensitive and demeaning conduct" that Virginia courts have rejected as insufficiently outrageous. *Harris v. Kreutzer*, 271 Va. 188, 204 (Va. 2006).

Whether Plaintiffs have adequately pled facts to support the fourth element of an IIED claim is a closer question. Unfortunately for Plaintiffs, Virginia courts have set a high bar for this element. Plaintiffs must be able to prove that the distress inflicted upon them was so severe that "no reasonable person could be expected to endure it." *Russo*, 400 S.E.2d at 163. In their Complaint, Plaintiffs alleged that they have suffered "severe emotional distress, pain, suffering, terror, humiliation, shame, and embarrassment." Compl. ¶ 37. But Virginia courts have rejected similar complaints as legally insufficient. For example, in *Harris*, a 2006 decision, the plaintiff alleged that:

> [S]he suffered severe psychological trauma and mental anguish affecting her mental and physical well-being. Symptoms of her anguish include nightmares, difficulty sleeping, extreme loss of self-esteem and depression, requiring additional psychological treatment and counseling. In addition, she claims to have suffered mortification, humiliation, shame, disgrace, and injury to reputation.

624 S.E. 2d, at 34. The Virginia Supreme Court held that it was "clear" that she failed to correctly plead severe emotional distress. *Id.* In *Almy*, decided the following year, the Court distinguished from *Harris* a plaintiff who had "additionally alleged that the defendants' actions additionally rendered her functionally incapable of carrying out any of her work or family responsibilities. . . . According to [Plaintiff], her emotional distress reached such a level of severity that every aspect of her life was fundamentally and severely altered, such that she had trouble even walking out of the front door." *Almy*, 639 S.E. 2d, at 188. The distress alleged by Plaintiffs is clearly more akin to that alleged by the Plaintiff in *Harris*.

Plaintiffs cite to *Hatfill v. New York Times Co.*, 416 F.3d 320 (4th Cir. 2005), as support for their argument that they have sufficiently pled severe emotional distress. In *Hatfill*, the Fourth Circuit held that the complaint, which alleged that the plaintiff "suffered severe and ongoing loss of reputation and professional standing, loss of employment, past and ongoing

7

financial injury, severe emotional distress and other injury," was sufficient under federal pleading standards to satisfy the fourth element of an IIED claim. *Id.* at 337. As the Court has already acknowledged, it is true that federal pleading standards apply in a diversity case—but *Hatfill* was decided prior to *Iqbal* and *Twombly*. The complaint's conclusory statement that Plaintiffs suffered "severe emotional distress," Compl. ¶ 37, does not "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. *Hatfill* was also decided prior to *Harris* and *Almy*, and the facts that were pled with requisite specificity do not satisfy the substantive standards set forth in those decisions, as discussed above.

Because Plaintiffs have not adequately pled that the emotional distress they suffered was severe, Defendants Ingroff and Miller's Motions to Dismiss Count 3 of the Complaint are **GRANTED**.

### B. Count 4: Conspiracy

The Defendants contend that Plaintiffs fail to state a claim for conspiracy to commit assault and battery for two reasons. First, Lamberti contends that Virginia does not recognize a cause of action for conspiracy to commit assault and battery. Second, Ingroff and Miller argue that Plaintiffs failed to plead sufficient facts to support a conspiracy claim.

Under Virginia common law, a civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose (or some purpose not in itself criminal or unlawful by criminal or unlawful means). *Hechler Chevrolet, Inc. v. General Motors Corp.*, 337 S.E.2d 744 (Va. 1985) (citing *Werth v. Fire Adjust. Bureau*, 171 S.E. 255 (Va. 1933)). Lamberti argues that a civil conspiracy cannot have an underlying unlawful purpose of assault or battery for the simple reasons that the Virginia courts have not yet so

recognized. He points to *Buck v. Oliff*, 1990 WL 751239 (Va. Cir. Ct. July 27, 1990), an unpublished case from an intermediate Virginia court which held that "there can be no such cause of action as conspiracy to commit assault and battery because the plaintiff must be damaged by the conspiracy, and the only way a plaintiff can be damaged is either by touching (and, hence, the tort of battery has been committed) or by being placed in fear (and, hence, the tort of assault has been committed)." But Plaintiffs respond by pointing to a much more recent case, also from an intermediate Virginia court, which found that a claim of conspiracy to commit assault and battery had been sufficiently pled. *See Selph v. Elbourn*, 79 Va. Cir. 536, 2009 WL 7416522, at *1 (Va. Cir. Ct. 2009). *See also Casey v. Zacharie*, 75 Va. Cir. 511 (Va. Cir. Ct. 2007) (rejecting a claim for conspiracy to assault and batter for insufficient pleading, not because the cause of action does not exist).

*Buck* and *Selph* therefore indicate only that that Virginia courts have yet to conclusively decide the matter. More helpful is *Almy v. Grisham*, where the Virginia Supreme Court decided whether the tort of conspiracy to intentionally inflict emotional distress should be a recognized cause of action. 639 S.E. 2d, at 188. It decided that it should not, reasoning that the underlying tort itself is disfavored "because the prohibited conduct cannot be defined objectively" and "clear guidance is lacking." *Id.* at 189. To recognize a conspiracy claim based on IIED would compound those difficulties, and "[c]ourts and juries would be faced with the amorphous task of determining whether parties have entered into an agreement to engage in conduct that cannot be defined objectively." *Id.*

But the torts of assault and battery are not ones that are "disfavored" under Virginia law, or so amorphous or ambiguous so as to lack applicable standards when forming the basis of a conspiracy claim. Certainly, the torts are not less objective than others for which the Virginia

9

Supreme Court has allowed civil conspiracy claims. *Hilb, Rogal & Hamilton Co. of Richmond v. DePew*, 440 S.E.2d 918, 921-22 (Va. 1994) (civil conspiracy for interference with contracts). *CaterCorp, Inc. v. Catering Concepts, Inc.*, 431 S.E.2d 277, 281-82 (Va. 1993) (civil conspiracy to induce breach of contract). Lamberti does not cite, and this Court has not found, Virginia cases establishing a general limitation on civil conspiracy causes of action. And the reasoning of *Buck* is unpersuasive in light of the general requirement for any common law civil conspiracy claim of "proof that the underlying tort was committed." *Almy*, 639 S.E.2d at 188. For these reasons, the Court finds no reason to exclude Plaintiffs' conspiracy claim as long as they adequately plead the elements set forth above.

This brings the Court to Defendants Ingroff and Miller's contention that Plaintiffs have failed to raise sufficient facts to justify their conspiracy claim. But the Complaint plausibly alleges that some of the Defendants used their cell phones to encourage other Defendants to "join them on the beach for the purpose of further harassing the Plaintiffs," Compl. ¶ 24, that the other Defendants arrived shortly thereafter with prior knowledge of Plaintiffs that they could not have otherwise obtained, Compl. ¶ 25, and that the assault and battery occurred "minutes" later, Compl. ¶ 26. Miller seizes on the use of the word "harassing" as indicating that the Complaint only alleges a conspiracy to lodge verbal insults. But that word can easily be read to include physical assaults. *See* "harass, v.", Oxford University Press, OED Online, (Sept. 2013), http://www.oed.com/view/Entry/84099?isAdvanced=false&result=2&rskey=JCqyZ7& (accessed November 18, 2013). Given the specificity of the factual timeline in the Complaint just outlined and the reasonable inferences that may be drawn therefrom, Defendant Ingroff's claims that the Complaint includes only speculation and is devoid of factual allegations are devoid of foundation.

For the reasons stated above, Defendants' Lamberti, Ingroff, and Miller's Motions to Dismiss Count 4 of the Complaint are **DENIED**.

## IV. CONCLUSION

For the reasons stated above, Defendant Lamberti's Motion to Dismiss is **DENIED**, and Defendants Ingroff and Miller's Motions to Dismiss are **GRANTED IN PART AND DENIED IN PART**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
November 20, 2013

/s/
Raymond A. Jackson
United States District Judge